NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO E.C.

No. 1 CA-JV 24-0022
FILED 05-30-2024

Appeal from the Superior Court in Maricopa County
No. JD531734, JS520593
The Honorable Gregory Como, Judge

**AFFIRMED**

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne Sanchez
*Counsel for Appellant Mother*

Arizona Attorney General's Office, Tucson
By Ken Sanders
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

**C R U Z**, Judge:

¶1            Jessica L. ("Mother") appeals from the superior court's order terminating her parental rights to her son, E.C.[1]  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2            In 2020, Mother's parental rights to E.C.'s sibling were terminated based on chronic drug abuse and fifteen months' time in care. E.C. was born in February 2023.  At birth, E.C. tested positive for codeine, morphine, fentanyl, methamphetamine, marijuana, and other drugs.  E.C. suffered severe withdrawal symptoms and had to be treated in the NICU. Upon release from the hospital, E.C. was placed in a special nursery for continued care of his withdrawal symptoms.  The nursery reported that Mother did not consistently visit E.C. and, when she did so, appeared to be under the influence of substances and had to be closely monitored by nursery staff.  Mother claimed to be receiving substance abuse treatment but refused to sign a release form so the Department of Child Safety ("DCS") could confirm she was receiving treatment.  Mother admitted having used heroin throughout her entire pregnancy.  When E.C.'s stay at the nursery ended, DCS placed him in a foster home.  In March 2023, the superior court adjudicated E.C. dependent.

¶3            DCS provided Mother with reunification services, including a referral to New Leaf Family Connections, substance-abuse assessment and recommended treatment at TERROS, random drug testing, a case aide, and supervised visitation.  Mother attended less than half of her visits with E.C., and when she did attend, she was frequently late and at times appeared to be under the influence.  By May 2023, Mother had stopped communicating with DCS and did not respond to its phone calls, emails, and letters.  She was closed out of TERROS and New Leaf Family Connections due to a lack of participation.  Mother did not engage in drug testing until late December 2023, a few weeks before the termination adjudication hearing on January 12, 2024.

¶4            In September 2023, DCS moved to terminate Mother's parental rights to E.C. pursuant to Arizona Revised Statutes ("A.R.S.") section 8-533(B)(8)(b) (six months' time in care).  That month, DCS suspended Mother's visitation with E.C. because she was not submitting drug tests or engaging in services.  By November 2023, Mother was still not

_____

[1]     The superior court also terminated the parental rights of E.C.'s father; he is not a party to this appeal.

communicating with DCS and had not asked to resume visitation with E.C. DCS closed out a referral for the Nurturing Parenting Program based on Mother's lack of engagement with DCS and other service providers.

**¶5**  Mother provided four negative urinalysis tests between December 27, 2023, and January 12, 2024. Mother refused DCS's request for a hair follicle test during this time period, however. Because Mother had started engaging with DCS, the ongoing case manager submitted a new referral for the Nurturing Parenting Program.

**¶6**  At the termination adjudication hearing, Mother testified that she had received substance abuse counseling through an online program, Anchors for Change, since December 2023, and had received inpatient substance abuse treatment at Virtue Recovery Center for two days in December but did not complete the program. Mother testified that she did not engage with TERROS because she did not "connect" with that program based on her previous experience there. Mother further testified that she had completed "a few" parenting classes. Mother failed, however, to provide DCS, her attorney, or the court with documentation of her substance abuse treatment and parenting classes. Contrary to Mother's testimony that she had not been invited to attend E.C.'s doctor and therapy visits, the DCS case manager testified that E.C.'s foster placement had done so.

**¶7**  After the termination adjudication hearing, the superior court terminated Mother's parental rights to E.C. pursuant to A.R.S. § 8-533(B)(8)(b). The court found that DCS had made diligent efforts to provide reunification services and that termination of Mother's parental rights was in E.C.'s best interests. Mother timely appealed. We have jurisdiction pursuant to A.R.S. § 8-235(A).

## DISCUSSION

**¶8**  The superior court may terminate a parent-child relationship if DCS proves by clear and convincing evidence at least one of the statutory grounds set forth in A.R.S. § 8-533(B). *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 249, ¶ 12 (2000). The court must also find by a preponderance of the evidence that termination is in the child's best interests. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004), we will accept its factual findings if supported by reasonable evidence and inferences and will affirm

the order terminating parental rights unless it is clearly erroneous, *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 478-79, ¶¶ 30-31 (2023).

**¶9** The superior court may terminate the parental rights of a child under the age of three if DCS "has made a diligent effort to provide appropriate reunification services," and the child "has been in an out-of-home placement for a cumulative total period of six months or longer pursuant to court order and the parent has substantially neglected or wilfully refused to remedy the circumstances that cause the child to be in an out-of-home placement, including refusal to participate in reunification services offered by [DCS]." A.R.S. § 8-533(B)(8)(b).

**¶10** Mother raises one issue on appeal: whether DCS failed to make diligent efforts to provide her with appropriate reunification services. Mother does not dispute that termination was in E.C.'s best interests, that he had been in an out-of-home placement for six months or longer, or that she substantially neglected or wilfully refused to remedy the circumstances causing E.C. to be in an out-of-home placement, so we do not address those issues. *See Michael J.*, 196 Ariz. at 249, ¶ 13; *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 377, ¶ 15 n.2 (App. 2010).

**¶11** DCS argues Mother waived her challenge to the adequacy of its reunification efforts by not raising the issue before the termination adjudication hearing. It cites *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174 (App. 2014) as authority for its waiver argument. The Mother in *Shawanee S.* did not raise the issue of insufficient services until her appeal. *Id.* at 175, ¶ 1. *Shawanee S.* states that when a party fails to raise an issue about DCS's diligence in providing reunification services in the superior court, they waive it. *Id.* at 179, ¶ 17. Here, as the State acknowledges, Mother raised the issue during the termination adjudication hearing. Because Mother raised an issue about services in the superior court, we address her appeal on the merits.

**¶12** DCS is obligated "to make all reasonable efforts to preserve the family relationship." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 186, ¶ 1 (App. 1999). Although DCS must provide a parent "with the time and opportunity to participate in programs designed to help her become an effective parent," it "is not required to provide every conceivable service or to ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). "[W]hat constitutes a diligent effort [under A.R.S. § 8-533(B)(8)] will vary by case based on the family's unique circumstances . . . ." *Donald W. v. Ariz. Dep't of Child Safety*, 247 Ariz. 9, 23, ¶ 50 (App. 2019). "[A] diligent effort

requires—at the least—DCS to identify the conditions causing the child's out-of-home placement, provide services that have a reasonable prospect of success to remedy the circumstances *as they arise throughout the time-in-care period*, maintain consistent contact with the parent, and make reasonable efforts to assist the parent in areas where compliance proves difficult." *Id.* (emphasis in the original).

¶13 Mother argues that DCS should not have suspended her visits with E.C. without a court order, should have provided her with the Nurturing Parenting Program (a service that would have improved Mother's parenting skills), and should have invited Mother to E.C.'s doctor and therapy appointments. As noted above, contrary to Mother's testimony, there was evidence that E.C.'s foster placement emailed Mother inviting her to attend E.C.'s appointments. Mother did not ask DCS to resume visits with E.C. after the visits stopped the same month the case plan was changed to termination and adoption, nor did she raise any issue about visitation until the termination adjudication hearing. The superior court admonished DCS for stopping visits without a court order but still found that DCS had made reasonable and diligent efforts to provide her with appropriate reunification services.

¶14 Reasonable evidence supported the superior court's finding. DCS provided Mother with substance abuse assessment and counseling through TERROS, a referral to New Leaf Family Connections, random drug testing, and case aide services. These services were designed to address Mother's chronic abuse of substances, the circumstance which caused E.C. to be in an out-of-home placement. For nearly a year, Mother substantially failed to engage with DCS and refused to participate in substance abuse treatment and testing. And when she finally engaged with DCS and provided several negative urinalysis tests in the weeks before the trial, DCS resubmitted the Nurturing Parenting Program referral. We find no error.

## CONCLUSION

¶15 For the foregoing reasons, we affirm.

